UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HIGHLAND PARK CARE CENTER, LLC, | Civil Action No.: 2:18-cv-01673 |
| Plaintiff, | |
| v. | The Honorable Nicholas Ranjan |
| CAMPMED CASUALTY & INDEMNITY COMPANY OF MARYLAND, | |
| Defendant. | |

## AMENDED COMPLAINT

The Plaintiff, Highland Park Care Center, LLC, by and through its undersigned counsel, files the following Amended Complaint in accordance with the Federal Rules of Civil Procedure, and alleges in support thereof as follows:

Parties and Jurisdiction

1.  Plaintiff, Highland Park Care Center, LLC ("Highland Park"), is a limited liability company organized and existing under the laws of the Commonwealth of Pennsylvania with an address of 745 North Highland Avenue, Pittsburgh, PA 15206. (See Docket No. 26 for Affidavit regarding citizenship of Highland Park, which is incorporated herein by reference.)

2.  Defendant, Campmed Casualty & Indemnity Company of Maryland, Inc. ("Campmed"), is a New Hampshire corporation doing business as a liability insurer with a principal place of business located at 440 Lincoln Street, Worcester, Massachusetts 01653.

3. Highland Park owns and operates a long-term care facility located at 745 North Highland Avenue, Pittsburgh, PA 15206.

4. Subject matter jurisdiction is founded upon 28 U.S.C. §1332, since there exists complete diversity of citizenship between the parties, and since the amount in controversy exceeds $75,000.

The Policy

5. Campmed issued a "Health Care General and Professional Liability Insurance Policy" identified as Policy Number 25CMCPA.062 ("the Policy") with a Policy Period from August 31, 2005 to August 31, 2006 with Grane Healthcare Company ("Grane") identified as the Named Insured. (A complete copy of the Policy is attached hereto as Exhibit "1" and is incorporated herein by reference.)

6. The Policy includes an Additional Location Endorsement through which Highland Park is specifically listed as a "Nursing Home (Skilled Care) Facility" and is identified as an Additional Insured.

7. Grane is a corporation which provided certain quality assurance type services to Highland Park during the relevant time period pursuant to a written agreement.

8. Although they are affiliated entities, Grane and Highland Park are separate and independent legal entities to whom separate and distinct duties and obligations are owed by Campmed under the Policy.

9. The Policy includes the following pertinent coverage provisions:

**1.** **Insuring Agreement**

    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of injury to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages.

> However we will have no duty to defend the insured against any "suit" seeking damages for injury to which this insurance does not apply. We may at our discretion investigate any "medical incident" and settle any "claim" that may result. But:
>
> (1) The amount we will pay for damages is limited as described in Section III – Limits of Insurance; and
>
> (2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements.
>
> No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments.

. . .

3. **Supplementary Payments**

> We will pay, with respect to any "claim" we investigate or settle or any "suit" against an insured we defend.
>
> a. All expenses we incur.
>
> b. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.
>
> c. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defenses of the "claim" or "suit" including actual loss of earnings up to $250 a day because of time off from work.
>
> d. All costs taxed against the insured in the "suit".
>
> e. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.
>
> f. All interest on the full amount of the judgment that accrues after entry of the judgment and before we have paid, offered

>to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the Limits of Insurance.

### The Scampone Litigation

10. On September 22, 2005, a suit was filed in the Court of Common Pleas of Allegheny County at G.D. 05-024806 on behalf of Richard Scampone, as Executor of the Estate of Madeline Scampone, against, among others, Highland Park and Grane (hereafter the "Scampone Litigation").

11. The Scampone Litigation was based on alleged injuries and damages suffered by the decedent, Madeline Scampone, who had been a resident at Highland Park for an extended period prior to her death.

12. In the Scampone Litigation, claims of negligence based on both vicarious liability and direct corporate liability were asserted against both Highland Park and Grane, and compensatory and punitive damages were sought.

13. The Policy, through the "Hospital Professional Liability Coverage Form" quoted herein (see ¶9) obligated Campmed to defend and indemnify Highland Park for all of the compensatory damage claims asserted against Highland Park in the Scampone litigation. Campmed was further obligated to pay all legal fees and expenses, costs of bonds, and pre-judgment and post-judgment interest incurred in the defense of the Scampone Litigation.

14. In accordance with the terms of the Policy, Campmed undertook to defend both Highland Park and Grane, but unilaterally elected to assign a single defense counsel to represent both Highland Park and Grane.

15. From the outset, Campmed acknowledged its duty to indemnify both Highland Park and Grane for all of the compensatory damages sought as well as all costs, pre-judgment interest,

and post-judgment interest incurred in the Scampone Litigation. Campmed disclaimed any responsibility to indemnify either Highland Park or Grane for punitive damages.

16. Campmed, through its appointed defense counsel, elected not to file any cross-claims between Highland Park and Grane, presumably solely for the purpose of minimizing Campmed's own costs of defense by enabling the defenses of Highland Park and Grane to be handled by a single counsel rather than separate counsel.

17. In 2007, a trial was held in the Scampone Litigation. Grane was granted a compulsory non-suit. A verdict was entered on June 5, 2007 against Highland Park for compensatory damages in the amount of $193,500.00 based on a finding of both vicarious liability for the negligence of Highland Park's employees and direct corporate negligence.

18. Scampone filed an appeal to the Superior Court of Pennsylvania from the judgment entered on the verdict on numerous issues, and Highland Park cross-appealed. On July 15, 2010, the Superior Court reversed the non-suit that had been entered in favor of Grane and remanded for a new trial on both compensatory and punitive damages against Grane, and also remanded for a new trial on punitive damages against Highland Park. See, Scampone v. Grane Healthcare Co., 11 A.3d 967 (Pa. Super. 2010).

19. Both Highland Park and Grane appealed to the Pennsylvania Supreme Court, which affirmed the Superior Court on November 21, 2012, although on different grounds. See, Scampone v. Highland Park Care Center, LLC, 57 A.3d 582 (Pa. 2012).

20. By letter dated November 6, 2013, prior coverage counsel for Grane and Highland Park demanded that Campmed appoint separate counsel to represent Grane and Highland Park. (A copy of the November 6, 2013 letter is attached hereto as Exhibit "2".) Among other things, the coverage counsel pointed out the need for the assertion and presentation of independent defenses

available to Highland Park and Grane, as separate entities, and also pointed out potential indemnity issues between the parties.

21. Campmed never responded to the demand for separate counsel to be appointed, but simply continued to control the defense of both Highland Park and Grane through the same appointed counsel, and through the same claims representative.

22. In February of 2014, Campmed filed an interpleader action in the Court of Common Pleas of Allegheny County at G.D.-14-003310 in an effort to pay the judgment that had been entered against Highland Park. In court filings and at oral arguments, Campmed, through counsel, repeatedly represented and promised to the Court and to Highland Park that it was not trying to terminate its defense obligations to Highland Park, and that if the interpleader was permitted it would not withdraw from defending Highland Park. However, the Court denied the interpleader by Order dated August 27, 2014.

23. On remand in the Scampone Litigation, the trial court again entered a compulsory non-suit in favor of Grane, and a trial was held limited to the issue of whether punitive damages were recoverable against Highland Park. The jury returned a defense verdict on September 30, 2014 in favor of Highland Park.

24. On April 27, 2015 Scampone entered judgment against Highland Park on the prior compensatory damage verdict, plus post-verdict interest that had continued to accrue following the prior verdict.

25. Scampone filed an appeal of the April 27, 2015 judgment to the Superior Court, again challenging the entry of the non-suit against Grane, and also seeking a new trial on punitive damages against Highland Park.

26. Following the filing of the appeal, Scampone sought to execute on the judgment against Highland Park, since Campmed elected not to post a bond as security for the judgment while the appeal was pending.

27. In response, Campmed (through its claims representative who was handling the defenses of Highland Park and Grane as well as all coverage issues related to Highland Park and Grane) sought to tender to Scampone the amount of the judgment on behalf of <u>both</u> Highland Park and Grane, in spite of the fact that the final amount of the judgment against Highland Park had not been finally determined by virtue of the appeal, and in spite of the fact that it had not been determined whether Grane was liable for either compensatory or punitive damages, and it had also not been determined whether Highland Park and Grane were joint tortfeasors and if so, the proportionate share of fault owed by each.

28. Because Campmed refused to agree that the proposed payment was solely on behalf of Highland Park and limited to Highland Park's liability for compensatory damages only, and because Campmed refused to agree that the proposed payment would not deprive Scampone of his right to continue to litigate the compensatory and punitive damage claims against Grane and the punitive damage claim against Highland Park, Scampone refused to accept the tender of the amount of the judgment (plus accrued interest) against Highland Park.

29. In spite of its repeated promises and representations that it would not withdraw from the defense of Highland Park, Campmed then surreptitiously engaged in a pattern of conduct through its claims representative and its appointed insurance coverage counsel through which Campmed sought to position itself to terminate its defense obligations to Highland Park by seeking to pay the amount of the judgment into an account held by the Prothonotary of the Court of

Common Pleas of Allegheny County, but without actually satisfying the judgment entered against Highland Park, even though a simple means of obtaining a satisfaction of the judgment existed.

30. Indeed, Campmed's insurance coverage counsel appeared before the Court and on the record specifically rejected the suggestion by both Scampone's counsel and by the trial judge that the parties enter into an agreement that would permit Scampone to receive the money that Campmed desired to tender, while preserving its appeal rights. The rejection of that proposed course of action was not done for the benefit of Highland Park or Grane, but was solely for the potential benefit of Campmed, who was seeking to position itself to withdraw from the defense of Highland Park, contrary to its prior promises and representations to Highland Park.

31. Campmed's direct interference in the defense of Highland Park resulted in the judgment remaining of record and remaining unsatisfied.

32. By Order dated August 31, 2015, the trial judge granted a motion filed on behalf of <u>both</u> Highland Park and Grane to pay money into Court based on the judgment plus interest accrued. That Order stated, in what was obviously dicta, the trial Judge's personal belief about the effect of the payment into court, i.e. that post judgment interest would cease to accrue on the amount paid into court. (A copy of the August 31, 2015 Order is attached hereto as Exhibit "3".)

33. In the August 31, 2015 Order, the trial judge explicitly stated that his opinion regarding post judgment interest was "by no means intending to be binding on any future court addressing issues related hereto". (Exhibit "3", FN 1). Thus, it is perfectly clear that the trial judge made <u>no</u> decision on the effect of the payment of money into the Prothonotary by Campmed.

34. Campmed never took the position that if the Court granted the Motion (filed on behalf of <u>both</u> Highland Park and Grane), it would contend that its coverage obligation to pay any further post-judgment interest would cease. Instead Campmed had always represented to Highland

Park and to the Court that the payment would not limit its defense or coverage obligations to Highland Park.

35. Highland Park reasonably relied on Campmed's affirmative representations regarding Campmed's continuing obligation to pay additional post-judgment interest.

36. On appeal, through an Opinion dated August 8, 2017, the Superior Court again reversed the trial court's grant of a compulsory non-suit to Grane, and also reversed and remanded for a new trial on the punitive damages claim against Highland Park. See, Scampone v. Grane Healthcare Company, 169 A.3d 600 (Pa. Super. 2017). The Supreme Court denied allowance of appeal from that decision of the Superior Court.

37. The Superior Court did not in any respect address the issue of whether the payment by Campmed into the Prothonotary terminated Scampone's right to additional post-judgment interest, since that issue had explicitly not been decided by the trial judge.

38. Scampone has at all times contended that the payment of money into Court by Campmed did not terminate Highland Park's obligation to pay post-judgment interest on the judgment entered against Highland Park.

39. In spite of the fact that Scampone is continuing to seek recovery of post-judgment interest from Highland Park, and in spite of the fact that the proportionate fault of Highland Park for compensatory damages has not yet been determined, Campmed then took the position that it would no longer defend Highland Park, and abruptly withdrew from the defense of Highland Park by letter dated September 24, 2018, a copy of which is attached hereto as Exhibit "4".

40. By letter dated September 25, 2018, counsel for Highland Park explicitly detailed the various reasons that a defense was still owed by Campmed to Highland Park. (A copy of the September 25, 2018 letter is attached hereto as Exhibit "5".) In the letter, counsel for Highland

Park offered Campmed the opportunity to reverse its decision, and indicated that Campmed's decision was clearly erroneous and in bad faith.

41.     However, Campmed refused to change its position, and instead by letter dated September 27, 2018 definitively reaffirmed its intention to withdraw the defense of Highland Park, citing to the obvious dicta from the August 31, 2015 order regarding post-judgment interest as a basis to conclude that no claim of post judgment interest could be made. (A copy of the September 27, 2018 letter is attached hereto as Exhibit "6".)

42.     Campmed deliberately withdrew its defense of Highland Park even though Campmed knew that claims of post-judgment interest and claims of contribution (between Highland Park and Grane) remained to be litigated, and even though the judgment against Highland Park remained recorded and unsatisfied.

43.     After Highland Park filed this suit, Campmed for the first time, in a letter dated December 14, 2018 took the position that because of the payment of money into Court in September of 2015, it no longer was obligated to provide coverage to Highland Park for post-judgment interest based on the language of the "Supplementary Payments" provision of the Policy. (A copy of the December 14, 2018 letter is attached hereto as Exhibit "7" and is incorporated herein by reference.)

44.     The denial of coverage for post-judgment interest based on the "Supplementary Payments" provision was first made more than three (3) years after the payment into Court was made by Campmed pursuant to the motion filed by Highland Park and Grane. The denial of coverage was directly contrary to the representations made by Campmed previously to Highland Park and the Court, has absolutely no merit under the terms of the policy or Pennsylvania law, and

was simply a further example of the malicious, willful and intentional conduct of Campmed in seeking to avoid its obligations under the Policy.

45. The belated assertion of the "Supplementary Payments" provision of the policy is also invalid because Campmed had definitively waived any right which it might have (which right is explicitly denied by Highland Park) to deny coverage for post-judgment interest, or to withdraw from the defense of Highland Park based on the payment of money into Court, and also because Highland Park reasonably relied upon Campmed's promises and representations that the payment into Court was not intended to affect Campmed's coverage obligations to Highland Park.

46. As a result of the withdrawal of the defense by Campmed, Highland Park was forced to retain its own counsel at its own considerable expense to continue its defense in the Scampone Litigation, including the defense of the motion for sanctions, the defense of the claim for post-judgment interest, the defense of issues of comparative fault/contribution, and the effort to satisfy the existing judgment against Highland Park.

47. At all times after the Court approved the payment of money based on the joint motion filed on behalf of Highland Park and Grane, Scampone asserted that he was owed additional post-judgment interest. On January 11, 2019 Scampone filed a Motion to Assess Additional Post-Judgment Interest against Highland Park since the judgment remains unsatisfied.

48. Following the filing of Scampone's motion, Campmed again refused to reverse its position and to resume the defense of Highland Park, even though the claim for additional post-judgment interest is clearly covered by the Policy.

49. On March 11, 2019, over the objection of Campmed, Grane filed a motion seeking leave of Court to assert a cross-claim for contribution and indemnity against Highland Park.

Nevetheless, Campmed refused to defend Highland Park on the motion, but instead in bad faith filed a Response on its own behalf purporting to oppose the cross-claim.

50. On June 7, 2019, Scampone filed an Amended Motion to Assess Additional Post-Judgment Interest.

51. On June 13, 2019, the Court orally informed the parties in open court following oral argument that the Amended Motion to Assess Additional Post-Judgment Interest would be granted. The Court also informed the parties that it would be granting Grane's Motion for leave to file the cross-claim against Highland Park. A formal Order was entered on June 25, 2019 whereby the Judgment was amended to add the additional post-judgment interest, such that the total judgment was increased to $354,778.29 (with interest accruing).

52. By letter dated June 18, 2019, Campmed informed Highland Park that it would resume the defense of Highland Park based on the Order granting leave to file the cross-claim against Highland Park. (A copy of the letter is attached hereto as Exhibit "8" and is incorporated herein by reference.)

53. However, even though the current amount of the judgment against Highland Park now significantly exceeds the amount Campmed has paid into Court, Campmed has denied coverage for the additional post-judgment interest that was awarded to Scampone, and which is continuing to accrue, citing the Supplementary Payments provision of the policy as a basis to refuse to pay these claims.

54. The additional post-judgment interest awarded against Highland Park is clearly covered under the Policy, and alternatively Campmed has waived the right to deny coverage, and is also estopped from asserting the Supplementary Payments provision language in light of its

explicit promises made to Highland Park and the Court that payment would not reduce Campmed's coverage obligations to Highland Park.

55. Campmed also refuses to reimburse Highland Park for its substantial defense costs incurred from August 2018 through June 2019, when it was forced to assume its own defense in the Scampone Litigation as a result of Campmed's improper withdrawal of the defense of Highland Park.

Count I – Declaratory Relief Pursuant to 28 U.S.C. §2201

56. The allegations of Paragraphs 1 through 55 are incorporated herein by reference.

57. An actual controversy exists between Highland Park and Campmed regarding the rights and duties of the parties under the terms of the Policy that, under the circumstances, permits this Court to declare the rights and duties of the parties in accordance with 28 U.S.C. §2201.

58. Highland Park is entitled to the following declaratory relief, and respectfully requests that this Court declare each of the following:

(1) That Campmed has owed a continuing duty to defend Highland Park in the Scampone Litigation at all times during the period from September 24, 2018 (when Campmed improperly withdrew the defense of Highland Park under the Policy) through the present and continuing; and

(2) That Campmed is obligated to provide coverage for all post-judgment interest for which Highland Park is ultimately obligated to pay on the judgment entered against Highland Park in the Scampone Litigation; and

(3) That the payment into Court by Campmed in the Scampone Litigation in September of 2015 did not relieve Campmed of its continuing obligations to defend Highland Park on any continuing claims for post-judgment interest against Highand Park.

WHEREFORE, Highland Park respectfully requests that the Court enter the declarations requested herein, in accordance with 28 U.S.C. §2201.

### Count II – Breach of Contract

59. Highland Park incorporates Paragraphs 1 through 58 as though set forth at length herein.

60. Campmed has at all times owed a continuing duty to defend Highland Park in the Scampone Litigation, pursuant to the terms of the Policy.

61. By abruptly withdrawing its defense of Highland Park, without any factual or legal justification, Campmed breached its contractual duty to defend Highland Park.

62. By failing and refusing to appoint separate counsel to represent Highland Park throughout the Scampone litigation, Campmed breached its duty to defend Highland Park.

63. Campmed breached its duty to defend Highland Park by improperly and falsely asserting that no claims for post-judgment interest were pending, when it knew that Scampone was seeking additional post-judgment interest in the Scampone Litigation.

64. Even if Campmed could otherwise have relied on its payment of money into Court in the Scampone Litigation as a basis to terminate its obligations to cover any additional post-judgment interest awarded thereafter, Campmed is estopped from denying coverage for the additional post-judgment interest due to its conduct in disavowing its intent to withdraw multiple times, in writing, and on the record before the Court in the Scampone Litigation, which representations were reasonably relied upon by Highland Park in acquiescing to Campmed's strategy of paying money into Court.

65. In the alternative, Campmed has waived any right to deny coverage for the additional post-judgment interest awarded (and continuing to accrue), by disavowing its intent to withdraw from the defense of Highland Park as a result of the 2015 payment into court.

66.     As a result of Campmed's breach of its duty to defend Highland Park, Highland Park has been forced to retain counsel at considerable expense to defend its interests in the Scampone Litigation.

67.     Highland Park is entitled to recover all sums that it has been and will be forced to expend as a result of Campmed's breach of its duty to defend, including but not limited to all attorney fees, expenses, costs, Court awarded monetary sanctions, post-judgment interest, interest on any amounts expended, and all amounts Highland Park may be forced to expend to settle any outstanding claims that are within the scope of coverage under the Policy.

68.     Highland Park is further entitled to recover any amounts that it might be forced to pay as post-judgment interest in the Scampone Litigation as a result of Campmed's breach of the duty to provide coverage for that post-judgment interest.

WHEREFORE, Highland Park demands judgment in its favor and against Campmed, in an amount in excess of $75,000, together with all costs or fees recoverable by law.

<u>Count III – Bad Faith</u>

69.     Highland Park incorporates Paragraph 1 through 68 as though set forth at length herein.

70.     Campmed has acted willfully, maliciously, intentionally and in bad faith in the manner in which it has handled the defense of Highland Park and its coverage obligations to Highland Park by preferring its' own financial interest over the interest of its insured, Highland Park, in each of the following respects:

(a)     By refusing to appoint separate counsel to represent Highland Park and Grane, despite the obvious conflict of interest that existed in the continuing joint representation of both entities in the Scampone Litigation;

(b) By failing to properly pay the judgment that was entered against Highland Park, such that the judgment remains pending in the public record, and by failing to properly seek and obtain a satisfaction of the judgment;

(c) By preferring Campmed's own financial interest by insisting that a payment of the judgment entered against Highland Park in the Scampone Litigation be made on behalf of both Highland Park and Grane, knowing that the payment would not be accepted by the Scampone Estate, and therefore failing to protect Highland Park from the judgment;

(d) By directing the defense of Highland Park in such a manner that will result in monetary and possibly substantive sanctions being entered against Highland Park;

(e) By engaging counsel to directly interfere with the defense of Highland Park, including the failure to agree to a settlement or satisfaction that would have protected Highland Park from the judgment entered against it;

(f) By abruptly, and without any factual or legal basis, withdrawing the defense of Highland Park in the Scampone Litigation, in spite of being aware that potentially covered claims remained to be litigated against Highland Park;

(g) By deliberately exerting financial pressure on Highland Park, through the concerted effort to withdraw from the defense of Highland Park, to force Highland Park to expend its own funds to settle the Scampone Litigation, in spite of Campmed's own duties to defend, settle and indemnify arising under the terms of the Policy;

(h) By repeatedly threatening Highland Park with citation to Highland Park's "duty to cooperate" as a means of coercing Highland Park not to protect its own interests, when Campmed knew that Highland Park had been entirely cooperative with the defense of the Scampone Litigation;

(i) By directing its own appointed insurance counsel to intervene (informally and formally) in the Scampone Litigation without factual or legal basis, but in an effort to protect Campmed's own interest over the interest of Highland Park, in violation of the Policy;

(j) By improperly, covertly obtaining the client files of Highland Park's appointed insurance defense counsel, including privileged communications, and concealing that fact from Highland Park, while this litigation was pending.

(k) By inducing Highland Park's appointed insurance defense counsel to breach their ethical obligations to Highland Park.

(l) By asserting the Supplementary Payments Provision of the Policy as a basis for terminating the defense of Highland Park after it represented to Highland Park that it would not;

(m) By abruptly and immediately withdrawing a defense of Highland Park days prior to a status conference despite the fact that it had represented in letters that it would give 30 days notice before withdrawing the defense;

(n) By willfully causing a single claims representative to be responsible for handling: (1) defense of Highland Park; (2) the defense of Grane; (3) coverage issues and disputes with Highland Park; (4) coverage issues and disputes with Grane; and (5) the defense of this action, in spite of the obvious conflicts of interest, and in spite of the knowing and willful breaches of its fiduciary obligations to Highland Park;

(o) By refusing to provide coverage to Highland Park for additional post-judgement interest awarded by the Court in the Scampone Litigation, after handling the defense of Highland Park in such a way as to cause the post-judgment interest to accrue; and

(p) By refusing to hire sufficient personnel to properly handle the fiduciary obligations to its insured, and instead by hiring a single claims representative to attempt to handle all defense and coverage issues, despite the obvious conflicts of interest that exist, and to the detriment of the rights of Highland Park.

71. As a result of the bad faith conduct described herein, Highland Park has suffered, and will continue to suffer, injury and damages, including but not limited to, attorney fees, expenses, costs, interest, and other compensatory damages recoverable pursuant to applicable Pennsylvania law.

72. In addition, the conduct of Campmed is in violation of 42 Pa.C.S.A Section 8371, and permits the recovery of attorney fees, costs, interest, punitive damages, and any other sums recoverable pursuant to the statute.

WHEREFORE, Highland Park demands judgment in its favor and against Campmed in an amount in excess of $75,000, together with all costs recoverable by law.

JURY TRIAL DEMANDED

By: /s/ Alan T. Silko
Alan T. Silko, Esquire
Pa. I.D. #46837
ASilko@Silkolaw.com
SILKO & ASSOCIATES, P.C.
80 Emerson Lane
Suite 1305
Bridgeville, PA 15017
412-914-0144 (office)
ATTORNEYS FOR PLAINTIFF