## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

HIGHLAND PARK CARE )
CENTER, LLC, )
 )
 )
   Plaintiff, ) 2:18-cv-1673
 )
  vs. )
 )
CAMPMED CASUALTY & )
INDEMNITY COMPANY OF )
MARYLAND, )
 )
   Defendant. )
 )

### AMENDED OPINION[1]

**J. Nicholas Ranjan, United States District Judge**

  This lawsuit mainly involves two insurance-coverage issues.  One, when does an insurer's duty to defend end?  And, two, can an insurer limit its liability to pay ongoing post-judgment interest on a verdict under a standard-interest clause by tendering that verdict?

  The material and undisputed factual allegations are as follows.

  In 2005, Richard Scampone brought a personal-injury action in Pennsylvania state court against the policyholder (Highland Park).  The lawsuit alleged negligence and sought compensatory and punitive damages.

---

[1] The Court issued its original opinion on May 8, 2020.  [ECF 77].  This opinion is amended to correct references to the coverage form, consistent with the Court's order denying reconsideration, dated May 21, 2020.  Specifically, the definition of "suit" on page 3 is modified, the quotation to the policy in footnote 3 is modified, the reference to the type of injury needed to establish a duty to defend on page 4 is modified, and footnote 8 has been added.  These changes essentially fix "scrivener's errors" in the prior opinion, and have no effect on the Court's analysis and findings in its May 8, 2020, opinion.

Highland Park's insurer (Campmed) defended, but disclaimed any liability for punitive damages, as there was a punitive-damages exclusion under the policy.

In 2007, the jury rendered a verdict of about $200,000 in compensatory damages against Highland Park. This was reduced to a judgment, which included an award for interest and costs. This was all covered by the policy.

In 2015, after a second trial on punitive damages (that led to a defense verdict) and an appeal, the case returned to the trial court. At that time, Campmed, on behalf of Highland Park, paid the verdict amount into a state-court account, plus the post-judgment interest that had accrued to that point. It did so to stop the clock on its post-judgment interest liability. Mr. Scampone, however, never collected that money or asked the clerk to mark the money judgment as "satisfied." And post-judgment interest continued to accrue beyond that date, as made clear by an order of the trial court entered a few years later.

In 2018, after another appeal, the case returned to the trial court. Mr. Scampone and Highland Park were set to proceed to trial solely on punitive damages. In September 2018, Campmed withdrew its defense, claiming that because only punitive damages remained and because the policy excluded coverage for those damages, Campmed owed no defense.[2] That trial never happened because the case settled in 2020.

When the Scampone case settled, the clerk disbursed the funds for the earlier judgment to Mr. Scampone and marked the judgment satisfied.

---

[2] Campmed resumed its defense on June 18, 2019 because, at that point, a co-defendant asserted a new covered cross-claim against Highland Park. [ECF 50, ¶ 52; ECF 56, ¶ 52]. Thus, Campmed was without a defense for about nine months during fourteen years of litigation in state court.

Highland Park and Campmed have now cross-moved for partial summary judgment on the issues noted above dealing with the duty to defend and duty to pay post-judgment interest on the verdict.  For the reasons below, and applying the familiar standard of review under Rule 56, the Court grants Highland Park's motion and finds that: (1) Campmed's duty to defend continued until satisfaction of the unpaid covered verdict; and (2) Campmed must pay all post-judgment interest added to that covered verdict under the policy's standard-interest clause because Campmed's 2015 payment of the verdict into a state-court account did not extinguish its interest obligation.

## DISCUSSION & ANALYSIS

### I.   Campmed's duty to defend extended until satisfaction of the unpaid covered verdict.

Highland Park claims that Campmed breached its duty to defend when it withdrew its defense of Highland Park in September 2018 because, at that point, there were still covered claims in the lawsuit—*i.e.*, the unsatisfied compensatory-damages verdict.   The Court agrees based on the policy language, Pennsylvania law, and the undisputed, material facts of this particular case.

The policy provides that Campmed has a duty to defend Highland Park in any "suit" seeking covered damages.[3]  [ECF 66-1, Section I(a)].  "Suit" is defined as a "civil proceeding in which damages because of injury to which this insurance applies are alleged."  [*Id.*].  To "allege" means to "assert," "declare,"

---

[3] The insuring agreement of the policy provides that Campmed will "pay those sums that the insured becomes legally obligated to pay as damages because of injury to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking those damages.  However, we will have no duty to defend the insured against any 'suit' seeking damages for injury to which this insurance does not apply."  [ECF 66-1, Section I(a)].

or "plead." *Allege,* DICTIONARY.COM, *available at* https://www.dictionary.com/browse/allege?s=t (last visited May 8, 2020).   Thus, for Campmed to have a duty to defend Highland Park, (1) there must be a pending civil proceeding, and (2) in that proceeding, there must be allegations seeking damages for injury that are covered under the policy.

If there are no longer any covered damages (*e.g.*, there is no pending "suit," or the suit no longer seeks damages that are covered under the policy), then the policy language dictates that Campmed no longer has a duty to defend. *See Post v. St. Paul Travelers Ins. Co.*, 691 F.3d 500, 517 (3d Cir. 2012) ("The insurer's duty to defend exists until the claim is confined to a recovery that the policy does not cover.") (cleaned up).

Thus, starting with this policy language, in September 2018, when Campmed withdrew its defense, there was a pending "suit" in which covered damages were "alleged."   Specifically, the Scampone suit asserted covered compensatory damages—*i.e.*, the $200,000 verdict.   That those damages were reduced to a judgment by verdict does not mean that those damages were excised from the proceeding.   And nothing in the policy suggests that damages are no longer being "alleged" (*i.e.*, asserted, declared, or pleaded) once reduced to a verdict.

Further, there still remained the possibility of additional litigation related to the compensatory-damages award, including disputes over execution and payment of the judgment.   In fact, those disputes occurred. *See* [ECF 66-7, at Ex. R].   Until those damages were finally resolved through satisfaction, covered damages were being alleged in the suit.   *See* 42 Pa. Cons. Stat. Ann. § 8104(a) (establishing that, under Pennsylvania law, a money judgment is not

discharged until the point of satisfaction).[4]  Campmed therefore had a duty to defend Highland Park until the judgment was paid, received by Mr. Scampone, and marked satisfied by the clerk.[5]

This differs from the more common situation in which a duty to defend ends in the middle of a pending suit.  That situation occurs when a suit asserts both covered and uncovered claims, and the court dismisses the covered claims.  At that point, the remaining claims are uncovered ones, and, depending on the language of the policy, the insurer's duty to defend may cease.  This is because the covered claims are completely eliminated from the lawsuit.  *See, e.g.*, *Commercial Union Ins. Co. v. Pittsburgh Corning Corp.*, 789 F.2d 214, 218 (3d Cir. 1986) (noting that insurer's duty to defend ceases "when a claim clearly within the policy coverage is withdrawn and one outside the policy coverage remains"); *Mechetti v. Ill. Ins. Exch./Classic Syndicate*, No. 97-5855, 1998 WL 151024, at *5 (E.D. Pa. Mar. 30, 1998) ("[T]he duty to defend remains with the insurer until the insurer can eliminate all causes of action that are potentially

---

[4] At oral argument, the Court raised the following hypothetical.  What if an insurer pays a covered judgment to the plaintiff, but the check gets lost in the mail?  The plaintiff then proceeds to file writs of garnishment and other collection motions against the policyholder.  Would the insurer have the duty to defend the policyholder against that litigation over the payment?  MSJ Hr'g Tr. Apr. 29, 2020, 32:13-33:10.  A liability insurer cannot, in good faith, leave its policyholder exposed, by withdrawing its defense when a covered judgment remains unsatisfied and subject to dispute.  This case is no different.

[5] Under Pennsylvania law, a judgment creditor, on the request of a judgment debtor, files a notice of satisfaction with the clerk.  42 Pa. Cons. Stat. Ann. § 8104(a).  That will "forever discharge the judgment."  *Id.* ("A judgment creditor who has received satisfaction of any judgment in any tribunal of this Commonwealth shall, at the written request of the judgment debtor, or of anyone interested therein, and tender of the fee for entry of satisfaction, enter satisfaction in the office of the clerk of the court where such judgment is outstanding, which satisfaction shall forever discharge the judgment.").

within the scope of the policy's coverage.") (citing *Cadwallader v. New Amsterdam Cas. Co.*, 152 A.2d 484, 488 (Pa. 1959)).

By contrast, here, the covered compensatory-damages claim remained in the lawsuit. It wasn't withdrawn. It wasn't dismissed. While the claim had led to a verdict and had been reduced to a judgment, that judgment was still due and owing as part of the lawsuit. Tellingly, Campmed does not direct the Court to a single case in which the duty to defend was deemed to be extinguished when a covered money judgment remained unsatisfied. [ECF 69, pp. 14-18; ECF 71, pp. 2-4].

General principles of Pennsylvania law bolster the Court's conclusion. In *Commercial Union*, the Third Circuit applied Pennsylvania law and analyzed the "rationale" for permitting an insurer to cease its defense in the middle of a lawsuit. 789 F.2d at 218. In interpreting a policy like the one here, the Third Circuit found that this rationale stemmed from the link between the duty to defend and duty to indemnify, and thus "the insurer is not liable to defend if it will not be liable to indemnify." *Id.* at 219.

Based on this same rationale, Campmed undisputedly had a duty to indemnify the covered verdict, up to the point of satisfaction. *Accord Home Owners Mgmt. Enters., Inc. v. Mid-Continent Cas. Co.*, 294 F. App'x 814, 817 (5th Cir. 2008) (finding that under a CGL policy, the "obligation to pay continues until the judgment is satisfied") (cleaned up). If the claim had been withdrawn or dismissed, then Campmed's duty to indemnify may have ceased, thereby terminating its duty to defend. But so long as that indemnifiable claim remained in the case and unsatisfied, Campmed's duty to defend existed.

This is not to say that satisfaction is the end date for an insurer's defense obligation in every case. Sometimes payment by the insurer to the third-party plaintiff will, as a practical matter, terminate that duty. After all, most of the

time, sensible plaintiffs and their lawyers are eager to collect a money judgment. But based on the unusual factual and procedural posture of the underlying case, absent satisfaction, the suit remained pending.

Consider that, as of September 2018, there was a covered claim that led to a covered money judgment but that hadn't been paid to Mr. Scampone; there had been constant litigation with Mr. Scampone over the execution of this judgment [ECF 66-2; ECF 66-4; ECF 66-5; ECF 70-3]; Campmed had deposited the judgment amount into a court account [ECF 68-11]; Mr. Scampone, suspicious of Campmed's motives, chose not to collect the money [ECF 70-4]; and the trial judge issued an order that forbid Mr. Scampone from otherwise executing on the judgment and advised the parties that they "proceeded at their own peril" as to "the legal consequences of their actions" [ECF 68-10]. Against all of this, there remained the uncovered claim for punitive damages that had yet to be tried. Under this unique factual scenario, satisfaction was the only thing that ended the "suit," terminated the covered claims, and brought finality to the case and to Campmed's obligation to defend. *See Seasor v. Covington*, 670 A.2d 157, 159 (Pa. Super. Ct. 1996) ("[S]atisfaction of a judgment ordinarily extinguishes the judgment and implies or manifests an expression of finality as to all questions of liability and damages.").[6]

---

[6] Campmed argues that under Pennsylvania law, only the judgment debtor (here, Mr. Scampone) could file a satisfaction. [ECF 71, p. 3]. But the statute permits the judgment creditor (Highland Park/Campmed), or "anyone interested therein" to request that the debtor file the satisfaction. 42 Pa. Cons. Stat. Ann. § 8104(a). For example, at one point in the case, Highland Park (when defended by Campmed) moved the trial court for satisfaction. *See Scampone v. Grane Healthcare Co., et al.*, No. GD-05-024806 (Allegheny C.C.P.), Dkt. 360. Additionally, as Highland Park's counsel pointed out at oral argument, no judgment debtor will refuse a good-faith request by a judgment creditor to file a satisfaction, because if he does, Section 8104(b) mandates that the debtor must pay the creditor liquidated damages. MSJ Hr'g Tr., 7:1-2

This may seem like an unfair result for Campmed.  Why should it be saddled with defending an uncovered punitive-damages claim simply because there is a covered claim that hasn't technically been marked as "satisfied"? That unfairness though stems from Pennsylvania law, which provides that in a multi-claim suit with covered and uncovered claims, the insurer must defend them all.  *See Maddox v. St. Paul Fire & Marine Ins.*, 179 F. Supp. 2d 527, 529 (W.D. Pa. 2001) (Smith, J.).

And, of course, insurers can contract around this problem.  Or, if there is doubt, they can seek comfort for their actions in court, such as through a declaratory judgment.  Indeed, Campmed tried many times in state court to gain certainty as to its coverage obligations.  It filed interpleader motions, paid money into the court, moved for partial satisfaction, and more.  But the trial court and Mr. Scampone's counsel stymied Campmed at every turn.  As a result, Campmed never obtained the certainty it needed.

Because the judgment on the underlying verdict was not marked as "satisfied" until January 2020, the Scampone litigation remained pending and was a "suit" that should have been defended by Campmed up until the point of satisfaction.[7]

## II. Campmed owes all post-judgment interest on the judgment against Highland Park.

Separate from the duty to defend, the parties dispute Campmed's obligation to indemnify Highland Park for all of the post-judgment interest on the covered verdict.  The parties agree that Campmed was responsible for some amount of post-judgment interest under the policy's "standard-interest clause,"

---

[7] Because the Court finds that the judgment on the underlying verdict remained unsatisfied, the Court does not address the parties' arguments about whether claims for comparative fault, post-judgment interest, and taxable costs remained pending and triggered Campmed's duty to defend.

which is found in the policy's supplementary-payments provision. The issue is the extent of that liability.

Campmed contends that the standard-interest clause gives it an escape hatch to stop interest as soon as it pays the judgment into court. [ECF 69, p. 18]. Campmed undisputedly paid the judgment into state court in September 2015, and thus it argues that it has no liability for interest that accrued from September 2015 onward. [*Id.*].

The Court disagrees with Campmed's interpretation of the policy. The policy requires Campmed to pay all post-judgment interest on the entire judgment. The only way for Campmed to escape this liability was to pay into court its entire policy limit ($1 million), not only the judgment. It never did so.

### A.   Background on the standard-interest clause.

The standard-interest clause has been a common form provision in CGL policies for at least the last 60 years. *See Pa. Nat'l Mut. Cas. Ins. Co. v. Jeffers*, 223 A.3d 1146, 1165 (Md. Ct. Spec. App. 2020) (collecting cases from as far back as 1959). It has been modified over time in certain aspects, which do not apply to this case.

As with many other CGL policies, the standard-interest clause is found in the supplementary-payments provision of the policy.[8] The supplementary-payments provision outlines several expenses that the insurer agrees to pay for a suit that it defends, such as litigation expenses, court costs, appeal bonds, pre-judgment interest, and post-judgment interest.

---

[8] In the policy, the supplementary-payments provision is found in Section I(3) of both coverage forms (*i.e.*, both the commercial general liability form and the hospital professional liability form). The provision is identical in both forms. For the avoidance of doubt, the Court's reference to this provision is to the hospital professional liability form, which is the form at issue in this case and which provided coverage in the Scampone litigation.

The standard-interest clause states that the insurer must pay:

> "[A]ll interest on the full amount of the judgment that accrues after the entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance."

*See, e.g.*, [ECF 66-1, Section I(3)(f)].   The standard-interest clause can therefore be broken into two parts.

The first part requires the insurer to pay "all interest on the full amount of the judgment" in any "suit" the insurer defends.   The majority of courts interpreting this language have held that the first part means exactly what it says—that an insurer must pay all interest on the judgment. *See, e.g.*, *Jeffers*, 223 A.3d at 1164  ("'[A]ll interest' does not mean 'some interest'; 'all' means 'all.'"); *Vazquez-Filippetti v. Cooperativa de Seguros Multiples de Puerto Rico*, 723 F.3d 24, 30 (1st Cir. 2013) ("The plain terms of the policy leave no doubt that Cooperativa obligated itself to pay [post-judgment] interest on the entire judgment against its insureds, notwithstanding the policy limit."); *Rockwell Auto. Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 544 F.3d 752, 759 (7th Cir. 2008) ("[C]ourts in Pennsylvania … construe the 'all interest' language as rendering an insurer responsible for all interest on a judgment, not just that portion of the judgment failing within the insurer's coverage.") (citations omitted).   Thus, the first part is "obviously meant to protect the insured." *Tex. Farmers Ins. Co. v. Miller*, No. 03-97-233, 1997 WL 746027, at *3 (Tex. Ct. App. Dec. 4, 1997).

The second part of the clause though is the insurer's "escape clause." Under the escape clause, the insurer can stop accrual of and liability for any further interest if it has "paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance."   That part is

"drafted for the benefit of the [insurer]" because "upon activation of the escape clause the [insurer] escapes all liability for [post-judgment] interest and thrusts that obligation onto its insured." *Tex. Farmers*, 1997 WL 746027, at *3 (citations omitted).

Because the standard-interest clause has been in CGL policies for so long, it has led to many disputes and reported decisions. *See generally* Douglas R. Richmond, *The Subtly Important Supplementary Payments Provision in Liability Insurance Policies,* 66 DEPAUL L. REV. 763, 798-805 (2017). The decisions always address this familiar scenario: there is a judgment greater than the policy limit, and the insurer triggers the escape clause by paying, offering to pay, or depositing its policy limit. *See Jeffers*, 223 A.3d at 1165 ("Cases under the standard interest clause typically arise when a plaintiff has obtained an excess judgment—a judgment that exceeds the insurer's limits of liability.") (citations omitted). And the majority of courts have recognized that the unconditional tender of the policy limit will stop the insurer's interest clock. *Id.* at 1167 ("A majority of courts have held that post-judgment interest ceases to accrue against the insurer when the insurer pays, offers to pay, or tenders the limits of its liability on the judgment[.]") (collecting cases).

Importantly, however, the parties cited ***no*** cases in their briefing [ECF 67, pp. 16-19; ECF 69, pp. 18-20], nor could the Court independently find any, which dealt with a situation like the one here. That is, none of the cases involve the situation where there is a judgment that is less than an insurer's limit, or where an insurer triggers the escape clause by paying anything besides the full policy limit.

**B.    The escape clause does not apply because Campmed never deposited its full policy limit into court.**

The primary intent of the standard-interest clause is for an insurer to pay **all** interest on any judgment that results from a suit that it defends.  The clause makes clear that the insurer will supplement its coverage in this way even if the ultimate judgment otherwise exceeds its limit of liability.  That's what makes it a "supplemental payment."  The only exception is where the insurer uses the escape clause.  But that escape clause can be triggered only when an insurer pays its full policy limit.  This is so because it is at that point that the insurer's duty to defend and ability to control the litigation automatically end.

Although no Pennsylvania cases have addressed this specific dispute or have interpreted the standard-interest clause in detail, Pennsylvania contract-interpretation principles guide the Court's conclusion, in these two respects.

***First***, the plain language of the standard-interest clause supports the Court's conclusion.

"The primary goal of insurance policy interpretation is to ascertain the intent of the parties as manifested in the words of the policy itself."  *Millers Capital Ins. Co. v. Gambone Bros. Dev. Co., Inc.*, 941 A.2d 706, 712 (Pa. Super. Ct. 2007) (citations omitted).  "Words of common usage in an insurance policy are to be construed in their natural, plain, and ordinary sense," with the court free to "inform [its] understanding of these terms by considering their dictionary definitions."  *Madison Constr. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100, 108 (Pa. 1999) (citations omitted).  "When the language of the policy is clear and unambiguous, a court is required to give effect to that language."  *401 Fourth St., Inc. v. Investors Ins. Grp.*, 879 A.2d 166, 171 (Pa. 2005) (citations omitted).  "When a provision in a policy is ambiguous, however, the

policy is to be construed in favor of the insured to further the contract's prime purpose of indemnification against the insurer, as the insurer drafts the policy, and controls the coverage." *Id.* (citations omitted).

Based on these interpretive principles, the Court interprets the language of the policy, giving effect to the meaning of every word. *Newman v. Mass. Bonding & Ins. Co.*, 65 A.2d 417, 419 (Pa. 1949) ("The court must give effect to every word that can be given effect."). The escape clause stops interest on payment of "the part of the judgment that is within the applicable limit of insurance." "Part," as a noun, is defined as the "portion or division of a whole that is separate or distinct." *Part*, DICTIONARY.COM, *available at* https://www.dictionary.com/browse/part (last visited May 8, 2020). Thus, giving all these words their plain meaning, which the Court must do, "part of the judgment" cannot refer to the "whole judgment."

This understanding is even more apparent when the specific language "the part of the judgment that is within the applicable limit of insurance" is read in distinction to the first clause that refers to the "full amount of the judgment." *See Melrose Hotel Co. v. St. Paul Fire & Marine Ins. Co.*, 432 F. Supp. 2d 488, 502 (E.D. Pa. 2006) ("[S]pecific provisions in a policy gain meaning based on their context in the policy as a whole.") (citing *401 Fourth St.*, 879 A.2d at 172). Taken together, these clauses make clear that there is a full judgment, and then there is a lesser part of that judgment.

Additionally, this language indicates that the lesser part of the judgment is equivalent to the policy limit. The escape clause refers to "the part of the judgment that is within the applicable limit of insurance." The use of the word "the" in "the part" modifies the phrase "judgment that is within the applicable limit of insurance," and is meant to apply to a specific aspect of the judgment. That specific aspect is **the** portion of the judgment that is within the policy

limit. "Within," when used as a preposition, means "in the compass or limits of." *Within*, Dictionary.com, *available at* https://www.dictionary.com/browse/within?s=t (last visited May 8, 2020). So, read all together, that means to take advantage of the escape clause, the insurer must deposit the specific portion of the full judgment that is the policy limit. Consequently, the escape-clause can ***only*** apply to the scenario of a full judgment that is greater than the policy limit, and the insurer's payment of the policy limit.

As an example, imagine a scenario where the full judgment is $1 million, but the policy limit is $200,000. The insurer immediately and successfully pays $200,000 into court to stop its interest obligation. Under this example, the full judgment is $1 million, but "the part of the judgment within the applicable policy limit" is $200,000.

By contrast, the escape clause does not support cutting off the post-judgment interest obligation when, as here, the judgment (about $200,000) is less than the policy limit ($1 million). Under this scenario, the insurer literally cannot pay "the part of the judgment that is within the applicable limit of insurance" because there is no such thing. There is no "part of the judgment" that is within the applicable limit, because the full judgment is within the limit. The escape clause simply cannot be triggered in this situation.

***Second***, the structure of the policy and general principles concerning an insurer's duty to defend support the Court's conclusion. This overall context is vital because the Court does "not consider merely individual terms in the insurance contract, but the entire insurance provision to ascertain the intent of the parties." *401 Fourth Street*, 879 A.2d at 171.

The structure of the policy in connection with the standard-interest clause make clear that the escape clause applies when in insurer makes a payment to exhaust its policy limit, thereby terminating its duty to defend.

- 14 -

The policy obligates the insurer to defend a covered suit, and if it does so, it also obligates the insurer to make supplementary defense payments, such as post-judgment interest. *See* [ECF 66-1]. When an insurer defends, it controls the defense. *Babcock & Wilcox Co. v. Am. Nuclear Insurers*, 131 A.3d 445, 456 (Pa. 2015) ("This broad duty to defend is mutually beneficial as it protects the insured from the cost of defense while allowing the insurer to control the defense to protect itself against potential indemnity exposure.") (cleaned up). And as the one in control of the defense, it would also have the right to appeal any judgment. Thus, in this context, it makes perfect sense for the insurer to pay all post-judgment interest. *See Fratus v. Republic W. Ins. Co.*, 147 F.3d 25, 29 (1st Cir. 1998) ("Compelling the insurer to pay all of the interest which accrues pending appeal protects the insureds, who may wish to pay the portion of the judgment in excess of policy limits and stop the tolling of interest, but whose lack of control over the litigation prevents them from doing so.") (citation omitted). After all, its decision to appeal is outside the policyholder's control, and thus further litigation delay and related interest are borne by the insurer. *Id.* ("The rule does not impose an unfair burden on insurers because they remain in control of both the tolling of interest and the litigation, and can fairly be expected to understand how the majority of jurisdictions interprets standard interest clauses.") (citations omitted).

But what happens when an insurer pays its applicable policy limit? As stated in the policy's insuring agreement, the insurer's duty to defend ends once it has "used up the applicable limit of insurance." [ECF 66-1, Section I(1)(a)]. But unlike when the insurer is defending, when the limit is exhausted, the policyholder, not the insurer, controls the defense. If the policyholder wants to appeal a judgment, it makes perfect sense for the policyholder to be responsible for any interest that accompanies its own decision to appeal.

Here, after the judgment was entered against Highland Park in 2007, the policy limit was not exhausted, and Campmed defended Highland Park, including in appeals to the Pennsylvania Superior Court and Pennsylvania Supreme Court. After remand, in September 2015, Campmed paid the full judgment amount that was less than the policy limit but continued to defend Highland Park while the case was appealed again. It had to keep defending Highland Park because there were covered claims and the policy limit had not been exhausted.[9] Interest continued to accrue for years after that while Campmed, not Highland Park, controlled the defense. It would violate the clear purpose of the standard-interest provision and the structure of the policy to allow the insurer the duty and right to defend, but to force the policyholder to pay interest attributable to the litigation decisions of the insurer. *See Mitchell v. Liberty Mut. Ins. Co.*, 24 P.3d 711, 726 (Kan. 2001) ("The purpose of the supplementary payments provision stating that an insurer will pay all interest on the entire amount of the judgment is to protect the insured when the insurer decides to contest liability and a judgment in excess of the policy limits is returned against the insured.") (citation omitted).

This may be why, as noted above, none of the reported cases on the standard-interest clause have concerned this factual scenario. Arguably, no insurer has ever sought to extinguish its interest obligation with a less-than-limit payment yet continue to control the defense of the case at the same time,

_____

[9] Campmed continuously defended Highland Park until September 2018. Even though Campmed ceased in its defense at that time for nine months, as the Court holds above, Campmed breached its duty to defend by stopping its defense for those nine months. In any case, Campmed resumed the defense, and continued to defend Highland Park from that point forward until the case was finally settled and the judgment marked satisfied. MSJ Hr'g Tr., 9:12-22.

including during an appeal of the judgment. Applying the standard-interest clause to such a situation would turn the policy and settled duty-to-defend principles on their heads.[10]

In sum, the standard-interest clause required Campmed to pay all post-judgment interest, unless it deposited into court a payment equal to its policy limit. Because Campmed deposited an amount less than the applicable limit of insurance, it did not terminate its interest obligation. The escape clause does not and cannot apply to such a situation. Campmed owes Highland Park all post-judgment interest on the Scampone judgment.

## CONCLUSION

For the reasons above, the Court will grant Highland Park's motion for partial summary judgment and deny Campmed's cross-motion. An appropriate order, consistent with this opinion, follows.

DATED this 21st day of May, 2020.

BY THE COURT:


*/s/ J. Nicholas Ranjan*
United States District Judge

---

[10] In its brief, Campmed distinguishes some of the cases that Highland Park cites, by arguing that those cases apply to a verdict in excess of policy limits, or concern exhaustion of policy limits. [ECF 69, p. 19 n.6]. But that is precisely the point. All the cases on the standard-interest clause concern those situations. Campmed cannot point the Court to a case that supports application of the standard-interest clause to the somewhat troubling situation of an insurer controlling the defense (including the appeal of a judgment) but meanwhile saddling its policyholder with interest.